APPEAL NO. 15-3993

_____
_____

IN THE UNITED STATES COURT OF APPEALS

FOR THE THIRD CIRCUIT

_____

UNITED STATES OF AMERICA,

Appellee,

v.

SHERRYMAE MORALES

Appellant.

_____

APPELLANT'S PETITION FOR REHEARING AND REHEARING *EN BANC*
_____

OMODARE JUPITER
Federal Public Defender
1115 Strand Street
Christiansted, VI 00820
Tel: (340)773-3585
E-mail: omodare_jupiter@fd.org
Counsel for Appellant

## CERTIFICATE OF PARTIES AND AMICI

This appeal arises from a criminal proceeding involving appellant Sherrymae Morales and appellee, the United States of America.  There are no interveners or amici.

## DISCLOSURE STATEMENT

The Petitioner is an individual and there are no corporations, associations, joint ventures, partnerships, syndicates, or other similar entities appearing as a party or amicus in this proceeding.

# **TABLE OF CONTENTS**

<u>Page</u>

CERTIFICATE OF PARTIES AND AMICI ............................................................i

DISCLOSURE STATEMENT ...............................................................................i

TABLE OF CASES, STATUTES AND OTHER AUTHORITIES ...................... iii

STATEMENT FOR REHEARING AND REHEARING *EN BANC* .......................1

ARGUMENT ........................................................................................................1

CONCLUSION .....................................................................................................14

CERTIFICATES ...................................................................................................15

ADDENDUM – OPINION OF THE PANEL .........................................................16

# TABLE OF AUTHORITIES

**Page**

<u>**Cases**</u>

<u>Ex Parte Bain</u>, 121 U.S. 1, 13-14 (1887) ....................................................3

<u>Richardson v. United States</u>, 526 U.S. 813 (1999) ....................................................1

<u>Stirone v. United States</u>, 361 U.S. 212, 217 (1960)............................................2,3,4

<u>United States v. Asher</u>, 854 F.2d 1483, 1497 (3d Cir. 1988) ....................................3

<u>United States v. Beros</u>, 833 F.2d 455 (3d Cir. 1987)................................1,2,10,11,13

<u>United States v. Castro</u>, 776 F.2d 1118, 1121-25 (3d Cir. 1985) ..........................2,3

<u>United States v. Daraio</u>, 445 F.3d 253, 260 (3d Cir. 2006) ................................3,6,7

<u>United States v. Edmonds</u>, 80 F.3d 810, 814 (3d Cir. 1996)....................................9

<u>United States v. Echeverry</u>, 698 F.2d 375, 377, <u>modified</u>, 719 F.2d 974 (9th Cir.1983) ....................................................................................................9,11

<u>United States v. Ferris</u>, 719 F.2d 1405, 1407 (9th Cir.1983) ....................................9

<u>United States v. Floresca</u>, 38 F.3d 706, 710 (4th Cir. 1994) ....................................3

<u>United States v. Gipson</u>, 553 F.2d 453, 457-58 (5th Cir.1977)................................10

<u>United States v. Mastelotto</u>, 717 F.2d 1238, 1250 (9th Cir.1983)............................9

<u>United States v. Miller</u>, 471 U.S. 130, 140 (1985) ..............................................1,2,3

<u>United States v. Payseno</u>, 782 F.2d 832, 836-7 (9th Cir.1986) ................................9

<u>Richardson v. United States</u>, 526 U.S. 813 (1999)....................................................9

<u>United States v. Robels-Vertiz</u>, 155 F.3d 725, 729 (5th Cir. 1998) ..........................3

United States v. Russell, 134 F.3d 171, 177 (3d Cir. 1998) ......................................9

United States v Ryan, 828 F.2d 1010, 1020 (3d Cir. 1987) ...............................1,8,9

United States v. Scalzitti, 578 F.2d 507, 512 (3d Cir.1978)......................................8

United States v. Somers, 496 F.2d 723, 743 (3d Cir. 1974)......................................3

United States v. Spinner, 180 F.3d 514 (3d Cir. 1999) .........................................1,3

United States v. Wozniak, 126 F.3d 105, 110–11 (2d Cir.1997) .............................4

## **Statutes**

18 U.S.C. §1343 ......................................................................................................4,11

Mod. Crim. Jury Instr. 3rd Cir. 6.18 .......................................................................12

### STATEMENT FOR REHEARING AND REHEARING *EN BANC*

As laid out in the argument below, petitioner / appellant Sherrymae Morales requests panel rehearing and/or rehearing *en banc*. In particular, appellant asks for rehearing because the record does not support the legal conclusions of the panel and the panel simply did not address legal arguments made on her behalf. Counsel for appellant requests rehearing *en banc*, and states, pursuant to L.A.R. 35.0, that based on belief stemming from on a reasoned and studied professional judgment, that the panel decision is in conflict with precedential opinions in this Circuit, see United States v. Spinner, 180 F.3d 514 (3d Cir. 1999); United States v. Beros, 833 F.2d 455 (3d Cir. 1987); United States v Ryan, 828 F.2d 1010, 1020 (3d Cir. 1987), and the Supreme Court of the United States, see Richardson v. United States, 526 U.S. 813 (1999); United States v. Miller, 471 U.S. 130, 140 (1985).

### ARGUMENT

**I.    The grand jury did not indict on a theory of material omission so use of this theory at trial impermissibly amended the indictment at trial.**

In error, the panel found that the indictment was not impermissibly amended at trial, Slip Opinion at 4, footnote 4, stating that the authority provided concerned indictments more specific and therefore, more restrictive.

A defendant's constitutional right to be tried only on charges returned by a grand jury is violated if the trial evidence and jury instructions broaden the possible

bases of conviction beyond that alleged in the indictment. United States v. Castro, 776 F.2d 1118, 1121-25 (3d Cir. 1985). The jury must be unanimous not only as to its finding that the statute was violated but also as to the particular act or acts by which it was violated. See United States v. Beros, 833 F.2d 455 (3d Cir. 1987).

Here, the government and the district court impermissibly broadened the possible bases for conviction beyond what the government presented to the grand jury. After that presentation, the grand jury charged Ms. Morales in counts fifteen through thirty-five specifically on a theory of misrepresentation. Throughout the trial, the government elicited testimony and offered argument supporting an uncharged theory of omission and not misrepresentation. Over defense counsel's objection, the district court then instructed the jury on omissions of material fact as the theory of criminal liability. The jury was permitted to base its guilty verdict on conduct differing from what was presented and returned by the grand jury in violation of the Grand Jury Clause of the Fifth Amendment. Ms. Morales was not on notice of the theory advanced at trial, because the grand jury had not indicted her based on this theory. The panel thus erred in determining this error was not harmless.

A constructive amendment occurs where a defendant is deprived of his "substantial right to be tried only on charges presented in an indictment returned by a grand jury." United States v. Miller, 471 U.S. 130, 140 (1985) (quoting Stirone v. United States, 361 U.S. 212, 217 (1960)) (internal quotation marks omitted). For the

2

past century, courts have recognized that any amendment of an indictment, other than by a grand jury, may be fatal to a subsequent conviction. Ex Parte Bain, 121 U.S. 1, 13-14 (1887). Such a constructive amendment to the indictment constitutes "a *per se* violation of the Fifth Amendment's grand jury clause." Castro, 776 F.2d at 1121–22 (3d Cir.1985)(quoting United States v. Somers, 496 F.2d 723, 743 (3d Cir. 1974)). There is "[a] constructive amendment to an indictment . . . when either the government (usually during its presentation of evidence and/or its argument), the Court (usually through its instructions to the jury), or both, broadens the possible bases for conviction beyond those presented by the grand jury." United States v. Daraio, 445 F.3d 253, 260 (3d Cir. 2006) (quoting United States v. Floresca, 38 F.3d 706, 710 (4th Cir. 1994)). "The key inquiry is whether the defendant was convicted of the same conduct for which [s]he was indicted." Id. at 260 (quoting United States v. Robels-Vertiz, 155 F.3d 725, 729 (5th Cir. 1998)).

In United States v. Spinner, 180 F.3d 514 (3d Cir. 1999), this Court recognized that "[d]eprivation of such a basic right is far too serious to be treated as nothing more than a variance and then dismissed as harmless error." Id.; see also United States v. Asher, 854 F.2d 1483, 1497 (3d Cir. 1988) (quoting United States v. Miller, 471 U.S. 130, 138 (1985). In Stirone v. United States, 361 U.S. 212 (1960), the indictment alleged that the defendant, through extortion, unlawfully interfered with interstate commerce through the importation of sand into Pennsylvania. However,

the evidence presented at trial was not only importation of sand, but also exportation of steel. The district court charged the jury that the defendant's guilt could rest on the effect of his conduct on interstate commerce with respect to either sand or steel. Id. at 214. The Supreme Court held that this instruction, coupled with the evidence adduced at trial, created an unconstitutional variance between the indictment and the proof, which "destroyed the defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury." Id. at 217; see also United States v. Wozniak, 126 F.3d 105, 110–11 (2d Cir.1997) (constructive amendment when district court charged jury on evidence relating to marijuana transactions but indictment alleged only cocaine and methamphetamine transactions).  Each of these cases' reversal was based on notice of violation of the statute by one theory when the evidence and instruction was based on a different theory of violation.

The indictment here charged Ms. Morales under 18 U.S.C. §1343 and stated in pertinent part:

> "SHERRYMAE MORALES, did knowingly devise and intend to devise a scheme and artifice to defraud and to obtain money, and property by means of false and fraudulent pretenses, representations and promises. . .".

Despite the indictment's language, the government improperly and persistently introduced evidence of Ms. Morales' failure to alert or correct her colleagues regarding her dual employment status.  The Virgin Islands National

Guard ("VING") was the only victim alleged in the indictment and misrepresentation was the only means of fraud alleged in the indictment. Despite this, the government purposefully expanded the indictment, impermissibly blending charged facts with uncharged facts. At trial, the government presented evidence of two different victims (VING as well as Military Services Personnel Corporation ("MPSC")), two different means of fraud (misrepresentation and omission), and two different time periods (March 2010 to June 2010 and September 2010 to July 2011), all while wholly neglecting to allege materiality. By the time the case was given to the jury for deliberations, charged and uncharged facts, theories, and victims had been so impermissibly mixed, that it is impossible to determine whether Ms. Morales was convicted for the same conduct for which she was indicted.  The government changed the conduct for which Ms. Morales could be convicted. In argument, the government erroneously told the jury that the defendant's failure to alert or correct either MPSC or the VING was an intentional violation of law, fully knowing that MPSC was not a named victim and a theory of omission was not presented or returned by the grand jury.

This issue was exacerbated by the district court's instructions to the jury regarding omission.  Nowhere in the indictment is a theory of material omission alleged.  This theory was not presented to the grand jury. Her alleged omissions were

purposefully advanced through testimonial evidence, closing statement, and jury instructions requested by the government, over objection.

Here, the district court delivered jury instructions that specified that the theory of liability was Ms. Morales' failure to alert or correct her colleagues. The court's charge, like the government's trial evidence and closing argument, suggested to the jury that a conviction could rest on conduct not alleged in the indictment. Over defense counsel's objection, the district court instructed the jury as follows:

> The false or fraudulent representation must relate to a material fact or matter. A material fact is one which would reasonably be expected to be of concern to a reasonable and prudent person in relying upon the representation or statements in making the decision. This means if you find that a particular statement of fact was false, you must determine whether that statement was one that a reasonable person might have considered important in making his or her decision. The same principal applies to fraudulent half-truths or omissions of material facts.

(App. 452). In light of the evidence elicited by the government, it is impossible to read the court's charge, and not conclude that the jurors would have understood the instruction to mean that they could find the defendant guilty for a willful failure to alert or correct.

In United States v. Daraio, 445 F.3d 253 (3d Cir 2006), this Circuit found that despite the government's introduction of uncharged conduct, the district court, through its instructions, was able to "focus the jury's attention on the conduct that

the indictment charged." Id. at 260. Specifically, Ms. Daraio was charged with "knowingly and willfully attempt[ing] to evade and defeat the payment of … payroll taxes due…" Id.   As in the case of Ms. Morales, the government elicited "a significant amount of evidence" concerning Ms. Daraio's prior tax non-compliance beyond that charged in the indictment. Id.  Recognizing this as an issue, the district court instructed the jury that although they had, "heard evidence of actions which relate to the failure to comply with law involving the payment of taxes or the filing of tax returns, [these acts] are not charged in the indictment." Id.  The district court also told the jury that "the [g]overnment must show more than the mere failure to do something, such as the failure to pay taxes which are due and owing." Id.  The instruction in the Daraio case illustrates what a trial court needs to do in order to focus the jury on the charged conduct when the jury hears evidence relating to uncharged criminal conduct, i.e. material omissions.

Here, the district court did not do that for Ms. Morales.  Instead, the district court provided the very brief instruction that, "the defendant is not on trial for any act not specifically charged in the indictment." (App. 434). This instruction is insufficient in several ways. First, judging from the district court's own instruction regarding acts of omission, this one sentence fails to alert the jury to a potential problem with the evidence they have already heard. Second, the brevity and generality of this instruction fails to serve the purpose of re-focusing the jury's

attention on only the conduct charged in the indictment. This boilerplate instruction is internally inconsistent with the court's later instructions and is woefully insufficient to cure the damage already done. Unfortunately, the trial court's instructions, here, were unclear at best and at worst further amended the indictment, exacerbating the problem introduced by the government.

By constructively amending the indictment, the government and the court erroneously permitted the jury to render a conviction on the unindicted theory of omission. Like the Supreme Court and Circuit precedent, the district court's instructions here, permitted the jury to base a conviction on the impermissible theory of omission. Ms. Morales' right to be tried only on charges returned by the grand jury was repeatedly and egregiously violated. Reversal of all counts of conviction is required.

## II. The district court was required but failed to give a specific instruction to the jury on unanimity.

"Unanimity is an indispensable element of a federal jury trial." United States v. Scalzitti, 578 F.2d 507, 512 (3d Cir.1978); see U.S. Const. art. III, § 2, cl. 3. This circuit provided guidance in United States v Ryan, 828 F.2d 1010, 1020 (3d Cir. 1987), that the panel cites to without following here. In any case where a count will be submitted to the jury on alternative theories, "prudence counsels the trial court to give an augmented unanimity instruction if the defendant requests such a charge." Id. In Ryan, the circuit further counseled that "[t]he marginal time and

inconvenience of giving an augmented instruction is a small price to assure that this indispensable element will be obtained and that a possible conviction will be upheld. A criminal defendant has a constitutional right to a unanimous verdict". Ryan, 828 F.2d at 1020 (citing United States v. Edmonds, 80 F.3d 810, 814 (3d Cir. 1996).

While as a general rule the trial judge need not give a unanimity instruction, this general rule does not apply in cases where the facts are exceptionally complex, see United States v. Payseno, 782 F.2d 832, 836-7 (9th Cir.1986), or where the allegations in a single count are either contradictory or only marginally related to one another, Id., or where there is a variance between the indictment and the proof at trial, United States v. Echeverry, 698 F.2d 375, 377, modified, 719 F.2d 974 (9th Cir.1983), United States v. Mastelotto, 717 F.2d 1238, 1250 (9th Cir.1983), or where there is a tangible indication of jury confusion. Echeverry, 698 F.2d at 376–77. In such cases, the district court **must** give an augmented unanimity instruction. United States v. Edmonds, 80 F.3d 810, 814 (3d Cir. 1996); United States v. Russell, 134 F.3d 171, 177 (3d Cir. 1998). See also Richardson v. United States, 526 U.S. 813 (1999) (discussing need for unanimity instruction on aspects of continuing criminal enterprise prosecution); United States v. Ferris, 719 F.2d 1405, 1407 (9th Cir.1983) ("Unanimity ... means more than a conclusory agreement that the defendant has violated the statute in question; there is a requirement of substantial agreement as to the principal factual elements underlying a specified offense.)

9

In light of the government's presentation of alternate theories pertaining to the 'scheme to defraud' *i.e.* misrepresentation and/or omission, coupled with the district court's improper instructions encouraging the jury to consider the uncharged theory of omission, the district court was required and failed to instruct the jury that they must unanimously agree as to which method formed the basis of the "scheme to defraud." Additionally, the district court was required to instruct the jury that it must also unanimously agree upon the particular act of misrepresentation.

> "Surely, just as the Sixth Amendment requires jury unanimity in federal criminal cases on each delineated offense that it finds a defendant culpable, it must also require unanimity regarding the specific act or acts which constitutes that offense. Absent such certainty, the unanimity requirement would provide too little protection in too many instances." United States v. Beros, 833 F.2d 455, 461 (3d. Cir. 1987).

In Beros, this Court held that "the unanimity rule . . . requires jurors to be in substantial agreement as to just what a defendant did as a step preliminary to determining whether the defendant is guilty of the crime charged." Id. at 460 (quoting United States v. Gipson, 553 F.2d 453, 457-58 (5th Cir.1977). This Court further elucidated that the focus should "not upon an instruction regarding unanimity on the charged theories, but rather upon an instruction regarding unanimity on the acts which are predicate to a finding on those theories." Id. This Court held that "the principal problem" in a case where a specific unanimity charge might be required

10

was, "the possibility that the jury was confused or mistaken regarding its obligation."

Id. at 461.  The court went on to state,

> When it appears . . .  that there is a genuine possibility of jury confusion or that a conviction may occur as the result of different jurors concluding that the defendant committed different acts, the general unanimity instruction does not suffice . . . To correct any potential confusion in such a case, the trial judge must augment the general instruction to ensure the jury understands its duty to unanimously agree to a particular set of facts.

Id. at 462-463 (citing United States v. Echeverry, 698 F.2d 375, modified, 719 F.2d 974, 975 (9th Cir.1983).  Additionally, this Court found that the government "cannot rely on a composite theory of guilt," and that allowing the jury to convict even though it "was not unanimous as to the defendant's specific action is no more justifiable than is a conviction by a jury that is not unanimous on the specific count."

Id. at 462.

This circuit's model jury instructions include a specific subsection detailing the requirement that the jury agree unanimously on a 'scheme to defraud' under 18 U.S.C. § 1343, that states:

> Count (No.) of the indictment, charging (name) with (mail) (wire) (bank) fraud, alleges a number of separate (schemes or plans to defraud) (schemes or plans to obtain money or property by means of false or fraudulent pretenses, representations, or promises).
>
> The government is not required to prove (all of the schemes or plans to defraud) (all of the schemes or plans

11

to obtain money or property by means of false or fraudulent pretenses, representations or promises) (all of the false or fraudulent pretenses, representations, or promises) that are alleged.

However, each of you must agree with each of the other jurors that the same (scheme or plan to defraud) (scheme or plan to obtain money or property by means of false or fraudulent pretenses, representations, or promises) alleged in Count (No.) was, in fact, employed by (name). The jury need not unanimously agree on each scheme or plan, but, in order to convict, must unanimously agree upon at least one such scheme or plan as a scheme or plan that was knowingly used by the defendant.

Unless each of you agrees that the government has proven the same (scheme or plan to defraud) (scheme or plan to obtain money or property by means of false or fraudulent pretenses, representations, or promises) beyond a reasonable doubt, you must find the defendant not guilty of the (mail) (wire) (bank) fraud charged in Count (No.) of the indictment.

Mod. Crim. Jury Instr. 3rd Cir. 6.18.1341-2.

But such instruction was not given.  Instead, the instruction given by the district court was brief and inadequate. When specifically instructing on the elements necessary to find Ms. Morales guilty of devising a "scheme to defraud", the district court stated: "You may not convict the defendant unless all of you agree to at least one of the material representations." (App. 22).  Particularly when coupled with the district court's instruction regarding the applicability of omission, this instruction is internally inconsistent and only further confuses the issue for jurors.  Because the government here presented two theories of culpability (misrepresentation and

12

omission) and each of counts three through thirty-six enumerated several distinct occurrences, any one of which could have supported a conviction, the jury should have been instructed that it must unanimously agree upon a particular theory of criminality, and also unanimously agree upon the specific conduct that it believed supported Ms. Morales' guilt under that theory.

Given the introduction of alternate theories of the offense here, *i.e.* misrepresentation and omission, the jury was required to unanimously agree as to which method formed the basis of the "scheme to defraud", as well as the specific act or acts of misrepresentation underlying the offense. The district court failed to give an augmented unanimity instruction, creating a significant likelihood that the jury may have returned a non-unanimous verdict.

Because there is a significant chance that the district court's error may have resulted in a non-unanimous verdict in violation of the Sixth Amendment, the error was not harmless beyond a reasonable doubt. Allowing the jury to convict, even though "it was not unanimous as to the defendant's specific action is no more justifiable than is a conviction by a jury that is not unanimous on the specific count." Beros, 833 F.2d at 462. The district court's failure to ensure that the jury understood its obligation to unanimously agree to a particular set of underlying acts mandates reversal.

## CONCLUSION

On the argument and authorities cited herein, Ms. Morales asks that the assigned panel rehear this matter, or that this Court rehear this matter *en banc* and reverse her convictions and order a new trial.

Respectfully submitted,

*s/Omodare Jupiter*
_____

OMODARE JUPITER
Federal Public Defender
1115 Strand Street
Christiansted, VI 00820
Tel: (340) 773-3585
E-mail: omodare_jupiter@fd.org
Counsel for Appellant

Dated: November 7, 2016

## **CERTIFICATE OF SERVICE**

I, OMODARE JUPITER, an attorney admitted to practice before this Court by virtue of his position in the Office of the Federal Public Defender, District of the Virgin Islands, do hereby certify that this petition was electronically filed with the Clerk of the Court using the CM/ECF system and that I caused a copy of the foregoing to be mailed to AUSA Everard Potter, Office of the United States Attorney, 5500 Veterans Drive, Suite 260, Charlotte Amalie, St. Thomas, VI 00802 on this 7th day of November, 2016.

*s/Omodare Jupiter*

_____

OMODARE JUPITER
Federal Public Defender
1115 Strand Street
Christiansted, VI 00820
Tel: (340) 773-3585
E-mail: omodare_jupiter@fd.org
Counsel for Appellant

## **CERTIFICATE BAR MEMBERSHIP**

I, OMODARE JUPITER, do certify that I am an employee of the Office of the Federal Defender, District of the Virgin Islands, and as such I am not required to be a member of this Court.

*s/Omodare Jupiter*

_____

OMODARE JUPITER

## ADDENDUM – OPINION OF THE PANEL

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3993
_____

UNITED STATES OF AMERICA

v.

SHERRYMAE MORALES,
                                        *Appellant*

_____

On Appeal from the District
Court of the Virgin Islands
(D.C. Criminal No. 3-14-cr-00054-001)

District Judge: Honorable Curtis V. Gómez

Argued on May 16, 2016

Before: FUENTES,[*] VANASKIE, and RESTREPO, *Circuit Judges*

(Opinion Filed: October 25, 2016)

Elizabeth A. DeLosa, Esq. **[Argued]**
Office of the Federal Public Defender
1803 Kongens Gade
St. Thomas, VI 00802

Omodare B. Jupiter, Esq.
Office of the Federal Public Defender
1115 Strand Street

_____

[*] Honorable Julio M. Fuentes assumed senior status on July 18, 2016.

Suite 201
Christiansted, VI 00820

*Counsel for the Appellant*

Everard E. Potter, I, Esq. **[Argued]**
Ronald Sharpe, Esq.
Office of United States Attorney
5500 Veterans Building, Suite 260
United States Courthouse
St. Thomas, VI 00802

*Counsel for the Appellee*

_____

OPINION[**]

_____

FUENTES, *Circuit Judge*.

A jury convicted Sherrymae Morales of twenty-one counts of wire fraud (18 U.S.C. § 1343) for holding two full-time positions and getting paid twice for the same 40-hour work week. Following the jury verdict, she was sentenced to 12 months and one day in prison and ordered to pay approximately $45,000 in restitution.

On appeal, Morales argues that the government and the District Court impermissibly broadened the bases for her conviction by allowing the jury to convict on a theory of material omission. She also contends that the jury was not properly instructed on the unanimity requirement for deciding the form of her "scheme to defraud." Lastly, she argues that the District Court erred in calculating her sentence and restitution, charging that the government failed to meet its burden to show any actual or intended

_____

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

loss to the victim. We have thoroughly reviewed the arguments on appeal and find that, with the exception of the challenge to her sentence, they are without merit. Accordingly, we will affirm the conviction, vacate the judgment of sentence, and remand for further proceedings.

I.[1]

At trial, the government presented a case that Morales defrauded her employer, the Virgin Islands National Guard (the "Guard"), by representing that she was working full-time for the Guard when, contrary to its policies and instructions, she was also employed full-time with a private contracting firm, Military Personnel Services Corporation ("Military Services"). A former employee of the Guard, Morales had joined Military Services in 2007, working closely with the Guard in a contract position. The first segment of her alleged scheme ran from March 2010 through June 2010, when she returned to work for the Guard but did not immediately quit her contract position, in effect drawing two full-time salaries for those three months. The second segment began when she picked the contract position back up in September 2010, drawing two salaries again until she finally resigned the contract for good in July 2011. When Guard employees observed Morales performing duties associated with the contract position while employed by the Guard, they assumed she was volunteering—a misimpression she sometimes confirmed and sometimes simply declined to correct. Timesheets, meanwhile, showed her working for both employers during the same hours of the day.

---

[1] The District Court of the Virgin Islands exercised jurisdiction under 18 U.S.C. § 3241. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

Yet as the government admitted in its opening statement, "by all accounts she was a good employee."[2] Witnesses, including those for the government, praised Morales as a competent, conscientious, and hardworking employee, who often pulled long hours on evenings and weekends. And Morales, who testified in her own defense, explained that she continued to work for Military Services on a supervisor's request during the search for a qualified replacement in the contract position.

The jury ultimately convicted on wire-fraud counts covering roughly the second part of the dual-employment scheme. Each "count" corresponded to a separate direct deposit of Morales's Guard paycheck.[3]

## II.

Morales challenges her conviction on the basis that the presentation at trial, including the jury instructions, amounted to a constructive amendment of the indictment, or alternatively an impermissible variance from the conduct alleged in the indictment. In a related claim, she argues that the District Court should have issued an augmented unanimity instruction to the jury. As discussed below the margin, we have reviewed these arguments and find them to be without merit.[4]

---

[2] J.A. 68.

[3] The District Court had entered partial judgment of acquittal under Fed. R. Crim. P. 29 prior to charging the jury, which otherwise acquitted Morales of the balance of the surviving counts in the indictment.

[4] The indictment was not constructively amended. It tracked the language of the statute, and both we and other courts have held that a "scheme to defraud" reaches both misrepresentation and omission. *See Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004); *United States v. Morris*, 80 F.3d 1151, 1161 (7th Cir. 1996) ("[T]he [mail and wire fraud] statutes apply not only to false or fraudulent representations, but also to the

III.

Morales also argues that the District Court erred in calculating loss under U.S.S.G. § 2B1.1.  The loss calculation, in turn, had the effect of enhancing her sentence and setting the restitution she owed to the Guard.[5]  Her arguments here have purchase.

By way of background: at sentencing, the District Court identified this Court's decision in *United States v. Nagle*[6] as guiding its application of § 2B1.1.  The District Court heard argument on the definition of "credits against loss" contained in § 2B1.1 comment 3(E)—which, among other things, requires that the loss calculation include an offset to account for "the fair market value of the property returned and the services rendered"—with the government conceding that it was "difficult to calculate how that loss is attributed."[7]  Agreeing that Morales was entitled to a credit against the loss, despite the government's position to the contrary, the Court calculated a "reasonable

---

omission or concealment of material information, even where no statute or regulation imposes a duty of disclosure.").  The cases upon which she relies involved indictments that were more specific, and thus more restrictive, than the one at issue here.  *See, e.g.*, *Stirone v. United States*, 361 U.S. 212, 218 (1960); *United States v. Wozniak*, 126 F.3d 105, 109–10 (2d Cir. 1997) ("[T]he indictment could have charged Wozniak generally with offenses involving controlled substances . . . without mention of any specific drug.").  For substantially the same reasons, we discern no improper variance and find that an augmented unanimity instruction was not warranted.  *See United States v. Ryan*, 828 F.2d 1010, 1020 (3d Cir. 1987) (articulating limited instances where an augmented instruction might be necessary); *see also United States v. Daniel*, 749 F.3d 608, 613–14 (7th Cir. 2014) (noting that facts constituting a scheme to defraud are not elements requiring unanimity).

[5] We exercise plenary review of the District Court's interpretation of the Guidelines and clear-error review over any findings of fact.  *United States v. Napier*, 273 F.3d 276, 278 (3d Cir. 2001).

[6] 803 F.3d 167 (3d Cir. 2015), *cert. denied*, 136 S. Ct. 1238 (2016).

[7] J.A. 597.

5

estimate of the loss" that did not require "mathematical precision,"[8] as it was authorized to do under comment 3(C). The presentence report ("PSR") reported the loss to the Guard as $90,852; Morales had objected to this figure as unsupported, and the government had described it as deriving from trial exhibits reflecting "the actual gross pay defendant received" from the Guard."[9] The District Court cut the PSR figure in half, coming up with a total loss of $45,426—a six-level enhancement under § 2B1.1(b)(1)(D). On a Guidelines range of 12–18 months, the District Court sentenced Morales to one year and a day in prison followed by three years of supervised release, and imposed restitution in an amount equal to the estimated loss.

While the District Court is entitled to estimate a reasonable loss figure, we disagree with its estimate on this particular record in the absence of additional findings of fact. Keeping in mind that the government bears the burden of "prov[ing] by a preponderance of the evidence the facts in support of a sentence enhancement,"[10] we find that the estimate failed to do what it appeared to be trying to do: credit Morales with the value of services that she actually provided to the Guard.[11]

There are two primary problems with the loss calculation. The first, arguably more minor, is the $90,852 figure itself. Although the District Court accepted it over Morales's objection, we are unable to meaningfully ensure that it is what the government

---

[8] J.A. 603.

[9] Gov't Sentencing Mem. 5, ECF No. 108.

[10] *United States v. Evans*, 155 F.3d 245, 253 (3d Cir. 1998).

[11] *Cf. Nagle*, 803 F.3d at 180–81 (discussing loss calculation in a "normal fraud case").

6

says it is (*gross* salary as opposed to after-tax salary on the counts of conviction), as the relevant trial exhibits do not appear to have been provided to us.

The second problem inheres in the unique record before the District Court. The District Court found that Morales did not actually work 80 hours per week between the Guard and Military Services, a sensible finding to which we defer. But that is not the same as finding that Morales worked only 50% of the time for the Guard. If loss is to be measured from the perspective of the money paid by the Guard over the counts of conviction, the present record, in the absence of findings to the contrary, does not show by a preponderance that the Guard received only half of the services for which it paid, or that Morales did not fulfill her obligation to the Guard as its employee.

Significantly, the government did not put on witnesses who testified to Morales's absenteeism or poor performance at the Guard, or to the declining quality of her work product. Instead, she received almost universal praise. This is also not a case where a defendant performed a job that she was unqualified to hold, having falsified or misrepresented her qualifications in order to obtain it.[12] And that she dedicated some hours in the day to Military Services is not dispositive, as it was apparently permissible to *volunteer* for the contractor while also maintaining Guard employment; the problem was the paycheck, not the work itself.

---

[12] *Cf. Evans*, 155 F.3d at 253 ("[T]he degree of harm . . . depends on the quality of services rendered."). This case also differs from *United States v. Burns*, 104 F.3d 529 (2d Cir. 1997), where the record was sufficient—via evidence of the hours devoted to another "job"—to allow the sentencing court to determine that the defendant did not actually meet his work obligations to his employer and thus caused a salary-based loss. *See id.* at 536. The record here is far more ambiguous and the estimate more sweeping.

At oral argument before this Court, the government conceded that nothing in the record specifically showed that Morales failed to perform services for the Guard. Further, the government characterized as "impossible" the task of determining precisely how Morales's scheme caused a loss to the Guard. Yet even when showing an exact amount proves elusive, it remains within the government's power to present evidence that would aid in forming a well-grounded estimate.

In sum, while the District Court's approach to estimation was reasonable—focusing on the losses suffered by the named victim, and attempting to determine, based on Morales's salary, the equivalent loss to such victim—the record does not support the broad result of its estimate. On remand, the District Court should make specific factual findings to determine whether the government has identified cogent evidence from the record showing that Morales caused a loss to the Guard. If the government has done so, the District Court should estimate a reasonable loss amount based on its magnitude—confirming the origin of the $90,852 figure, if necessary—and should then impose sentence and restitution reflecting the new loss amount.[13]

## IV.

For the foregoing reasons, we will affirm the District Court's judgment of conviction, vacate its judgment of sentence, and remand for resentencing.

---

[13] We do not forestall the possibility that the District Court may, on remand, determine that its original 50% loss amount is in fact supported by the record, or that portions of its judgment of sentence might remain the same even if a revised loss calculation alters Morales's Guidelines range. Nevertheless, we reemphasize that the government is not entitled to the sentencing enhancement simply because it prevailed in part at trial. It must be held to its burden of proof.